**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>STANLEY MANN, THE STANLEY MANN 2007 INSURANCE TRUST, CHRISTIANA BANK & TRUST CO., as Trustee, and JOHN DOES 1- 10,<br><br>Defendants. | Civil Action No: 1:09-cv-00434-GMS |

**AMERICAN GENERAL LIFE INSURANCE COMPANY'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR <u>ISSUANCE OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE</u>**

American General Life Insurance Company ("American General") hereby responds as follows:

### I. Defendants Have Not Shown A "Good Reason" To Deny Judicial Assistance.

Rule 28 of the Federal Rules of Civil Procedure, which authorizes courts to issue letters rogatory, also limits the discretion of the courts in deciding whether to issue a letter rogatory. Fed. R. Civ. Pro. 28(b); *see* Wright & Miller, 8A *Fed. Prac. & Proc. Civ.* § 2083 (3d. Ed.). Since the amendments to Rule 28 in 1963, which removed language that prohibited courts from issuing letters rogatory except when "necessary or convenient," courts have held that a party that objects to the issuance of a letter rogatory must show some "good reason" for the court to deny the judicial assistance sought. *Complaint of Banker's Trust Co.*, 752 F.2d 874, 890 (3d Cir. 1985); *Ethypharm S.A. France v. Abbott Labs.*, 2010 WL 4340462, at *3 (D. Del.) (citing *DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367 (D. Mass. 1990). Furthermore,

the burden is on the party opposing issuance of the letter rogatory to show that good cause exists to deny the motion. *See DBMS Consultants*, 131 F.R.D. at 369.

Rule 28 must also be read in conjunction with Rule 26, which provides that, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Because it is well recognized that the Federal Rules allow broad and liberal discovery, *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999), district courts, in interpreting Rule 26(b)(1), must be mindful that relevance is a broader inquiry at the discovery stage than at the trial stage, *Gateway Eng'rs, Inc. v. Edward T. Sitarik Contracting, Inc.*, Misc. No. 09-209, 2009 U.S. Dist. LEXIS 94351, at *5 (W.D. Pa. October 9, 2009). Accordingly, only if "it is *palpable* that the evidence sought can have no possible bearing upon the issues" should a court deny discovery. *See Cash Today of Texas, Inc. v. Greenberg*, 2002 WL 31414138 (D.Del. 2002) (quoting *Hercules Powder Co. v. Rohm & Haas Co.*, 3 F.R.D. 302, 304 (D. Del. 1943)).

## II. The Information And Documentation Requested Is Clearly Relevant.

American General seeks to void the Policy because its owner, the Mann Insurance Trust, lacked an insurable interest in Mann's life as of the time the Policy was issued. Specifically, American General contends, and the documentary evidence and sworn testimony to date confirms, that Mann Insurance Trust lacked an insurable interest at the time the Policy issued because it was created for the sole purpose of serving as a pass-through of the beneficial interest in the Policy to the GIII Trust and Dariconic[1] as its sole beneficiary. And an insured's intent, at the time of application, to transfer beneficial interest in a policy to a stranger after the issuance of

---

[1] Hamildak Limited ("Hamildak") is the successor to Dariconic. Hereafter, Dariconic and Hamildak will collectively be referred to as "Dariconic." American General's failure to specifically identify Hamildak does not operate as a waiver of any arguments raised in support of its request for international judicial assistance.

the policy, or after the expiration of a contestable period, vitiates the insurable interest of an insurance trust and the trust beneficiary. *See Principal Life Insurance Company v. Rucker*, C.A. No. 08-488-MPT, (D.Del. August 30, 2010).

American General has preliminary evidence suggesting that the GIII Trust Agreement and Origination Agreement specifically identify demographics for prospective elderly insureds and prescribes the form and content of trust documents to be employed in setting up the insurance transaction in order to facilitate transfer of the controlling interest in policies after they are issued.

Specifically, in response to document requests issued by American General, the administrative Trustees of GIII, Wells Fargo Bank, N.A. ("WF Bank") and Wells Fargo Delaware Trust Company, N.A. ("WF Trust Co."), produced a document entitled "Exhibit R - Form Of Verification Provider Certificate" (the "Certificate"), which was executed by WF Bank, not in its capacity as Trustee of GIII, but in its capacity as Verification Provider. (*See Ex. A, Exhibit R to the GIII Origination Agreement at GIII-MANN, 0433-0437*).

The Certificate references the Amended and Restated GIII Origination Agreement and states that all capitalized terms are defined in the Origination Agreement.  By signing the Certificate, Wells Fargo confirmed that Mann was an "Eligible Participant," that the Mann Policy was an "Eligible Policy," and that all "Eligible Participant Closing Documents and Service Provider Documents" were provided prior to closing of the sale of the beneficial interest in Policy to GIII. (*See* Ex. A, GIII-MANN 0433).

The Certificate also attaches "Appendix 1 – Items To Be Verified By Verification Provider."  In addition to describing the documents WF Bank must verify, Appendix 1 states that the form of those documents to be verified is prescribed by other Exhibits to the Origination

Agreement, including: (1) a Trust Agreement for the Insurance Trust; (2) an Amended and Restated Insurance Trust Agreement; (3) a Policy Illustration; and (4) life expectancy reports from AVS Life Expectancy ("AVS") and 21st Services Life Expectancy ("21st Services")(S*ee* Ex. A, GIII-MANN 0436).

There are obvious indications of symmetry between the Mann transaction and the documents prescribed in the GIII Origination Agreement, which predates the Mann Insurance Trust by more than one year. In other words, the Mann transaction included many of the documents required for approval by the GIII Origination Agreement, but not necessary to the creation of a trust in the normal course. For example, the Mann transaction included two life expectancy reports, which are not typically required for the creation of a trust. Notably, the reports were provided by the same two agencies approved in the GIII Origination Agreement - AVS and 21st Services. And both reports were obtained in February 2007, several months *before* the Policy application was submitted. (*See* Ex. B, JOCAP-MANN 89-93).

The deposition testimony of Defendant Mann also confirms that the documents and information sought from Dariconic are relevant. Specifically, Mann testified that he was originally contacted "out of the blue" by Bob Gold of Wechsler Financial and that Mr. Gold said he had "an investment opportunity." (*See* Ex. C at 66-67). Thereafter, Mann received literature illustrating how seniors can sell the ownership interest in large face amount life insurance policies for cash. (*See* Ex. C at. 68; *see also* Ex. D, STANLEY MANN 004-020).

According to Mann, he understood this would be a "free policy" because "all the premiums would be paid" by someone else (*See* Ex. C at 84-85). True to form, Mann never did pay a single premium on the Policy (*See* Ex. C at 86-87). Rather, Mann used his personal checking account as a "pass through" for the payment of premiums on the Policy and the

payment of trustee fees to Christiana (*See* Ex. C at. 110). In fact, in August 2007 Mann's personal check in the amount of $4,000 representing trustee fees was provided to Christiana via memo entitled "*G3: Notice of Trustee Fee.*" (*See* Ex. C at 175-176; *see also* Ex. E, MANNTRUST 0153). The $4,000 had been paid to Mann by Wechsler the week before (*See* Ex. C at 175-176).

Mann admitted that he does not know how or why either the Mann Family Trust or Mann Insurance Trust was created or what each says (*See* Ex. C at 169-170, 178). Rather, he was instructed to execute both trusts by Wechsler (*See* Ex. C at 170, 178). Mann also claims he was not aware that two life expectancy reports were performed on his life (*See* Ex. C at. 239-240).

Based on the documents and testimony to date, it is clear that the documents and information requested from Dariconic is both highly relevant to American General's claims and very likely to lead to the discovery of additional admissible evidence. American General needs the documents for comparison with those in the Mann transaction to confirm and demonstrate the symmetry between the requirements for approval to purchase by Dariconic and the creation of the Mann Insurance and Family Trusts.

**III.     Dariconic Directed The Actions Of The GIII And Mann Trustees.**

It is undisputed that Dariconic, as grantor and sole beneficiary of GIII, holds the beneficial interest to the Policy at issue. Further, it is undisputed that Dariconic played a significant role in creating the multi-layer trust arrangement currently before this court as well as the procedure for implementing it. And, given Dariconic's immediate interest in the Policy and underlying transaction, Defendants have no cause to complain about Dariconic being subject to discovery. *See, e.g. In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (noting that "it is relevant to inquire whether the putative non-party actually has an interest in the outcome of the

case").

Specifically, Dariconic's direct involvement was confirmed by the testimony of Jose I. Mercado ("Mercado"), Vice President of Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust Company, N.A. Mercado was the primary administrator of the trustee services provided to GIII by WF Bank and WF Trust Co. (*See* Ex. F at. 76).[2] According to Mercado, the sole purpose of GIII was to purchase beneficial interests in insurance trusts that own life policies. (*See* Ex. F at 202). Mercado also testified that he was responsible for administering GIII *in accordance with the GIII Trust Agreement and Origination Agreement* (*See* Ex. F at 38, 69). In doing so, Mercado did not take direction from anyone at WF Bank or WF Trust Co. with respect to the administration of the GIII (*See* Ex. F at. 39). Rather, he took *exclusive direction* from the grantor and sole beneficiary of GIII, Dariconic. (*See* Ex. F at 39-41). And the GIII Trustees had no discretionary authority in administering the GIII Trust. (*See* Ex. F at 39-40).

Consistent with, and as evidence of, Dariconic's involvement in the Mann transaction, Mercado confirmed that the GIII Trustees were aware that the Mann Insurance Trust and Mann Family Trust were being created as early as June 2007 (*See* Ex. F at 125-126, 134, 150). Specifically, on June 14, 2007, Mercado was copied on an email entitled "G3: Notice to File Trust – Stanley Mann 2007 Family Trust," which attached the Mann Family Trust Agreement *See* Ex. G, GIII-MANN 0102). The next day, Mercado was copied on an email entitled "G3 Closing – Stanley Mann 2007 Insurance Trust," which attached the Policy Application and Policy Illustration (which is a requirement of the GIII Origination Agreement but not typically required for the creation of an Insurance Trust)(*See* Ex. G, GIII-MANN 0059). Both emails also copied a group mailbox entitled PotterG3@potteranderson.com, which is managed by Potter,

---

[2] WF Bank, WF Trust Co., and Mercado (as authorized representative of both entities) are collectively referred to as the "GIII Trustees."

Anderson & Corroon – the law firm that represents WF Bank and WF Trust Co. in their role as trustees for GIII (*See* Ex. F at 67-68). Mysteriously, Mercado claims to have no idea why he, as administrator of GIII, and the trustees' counsel were copied on emails referencing the GIII, Mann Family Trust and Mann Insurance Trust in June 2007, long before the Policy was even issued (*See* Ex. F at 131-135). Nor could he explain why these emails referenced GIII (*See* Ex. F at 133-135). Yet, he saved the emails and filed them in an Outlook folder entitled "Mann, Stanley." (*See* Ex. F at 131-135).

According to Mercado, Dariconic, *not the GIII Trustees*, was presented with the offer to purchase the beneficial interest in the Mann Insurance Trust and, on Dariconic's instruction, GIII did purchase the beneficial interest (*See* Ex. F at 100, 124). And as the sole beneficiary of GIII, Dariconic also directs the actions of the Trustee of the Mann Insurance Trust and the Mann Family Trust, which is Christiana (*See* Ex. F at 101).

In sum, Mercado's testimony and the referenced documents confirm that Christiana and the GIII Trustees were directed by Dariconic and that the GIII Trustees, their counsel and Dariconic were aware of and participated in Mann's purchase of the American General Policy as early as June 2007. Thus, there can be little doubt that American General Policy was being positioned for a pass-through to GIII and Dariconic. Accordingly, American General is entitled to obtain documents and testimony demonstrating Dariconic's directives and intentions regarding its purchase of the beneficial interest in the Mann Insurance Trust.

### IV. The Information Requested Is Not Duplicative Of Discovery Obtained From Defendants And Other U.S. Entities. [3]

Based on the documents and testimony detailed above, the record evidence clearly

---

[3] Defendants' specious claim that the document requests are overly broad because there are 45 separate categories should be disregarded. Of the 45, 39 categories specifically limit the requests to documents involving the Mann Insurance Trust, Mann Family Trust and/or the Mann Policy, which are clearly relevant and cannot possibly be construed as overly broad. (See Opposition at 4).

- 7 -

establishes that GIII and Dariconic were involved in the Mann transaction as early as the application process for the American General Policy (*See* Ex. G, GIII-MANN 0059, 0102). Thus, its role was not, as Defendants claim, "attenuated at best." (*See* D.I. 103 at 3). Rather, contrary to Defendants specious contention, there is "[*every*] reason to believe that Dariconic [and] Hamildak would have…documents [and] files that are not duplicative of discovery already obtained by American General." (*Id.*).

For example, discovery from the Defendants or other U.S. entities would not contain documents that reference or pertain to: (1) communications between Dariconic and Marsh Management Consultants, which was the GIII Trustees' contact for Dariconic (*see* Ex. D at 226-228); (2) when Dariconic became aware of and/or involved in the Mann transaction; (3) when and why Dariconic decided to purchase the beneficial interest in Mann's American General Policy; (4) when, how, why and by whom the GIII Trust was formed; (5) the original GIII Origination Agreement and Trust Agreement, as well as all revisions, restatements and modifications thereto; (6) Dariconic's relationship and/or agreements with Broker-Dealers, Insurance Producers, Service Providers, legal advisors, and/or financial advisors regarding the GIII Trust an the Mann transaction; (7) advertising and/or marketing materials disseminated or distributed regarding Dariconic and/or the GIII Trust; (8) the business structure, ownership and/or control of Dariconic; and (9) the manner in which benefits from individual life insurance policies, such as Mann's, are distributed from the GIII Trust. These are just a few examples of significant areas or information covered by the requests that clearly are not duplicative.

### V. Defendants Have No Standing To Object To The Scope Of The Request.

The Defendants argue that the letter rogatory should not be issued because the "requested discovery is extremely broad" and "represents a significant burden on the Irish entities." (*See*

D.I. 103 at 4). The Defendants, however, are not the entities in possession or control of the documents sought by the letter rogatory and will not bear the burden, if any, of the discovery request. Therefore, they have no standing to object to the scope of the letter rogatory – this objection is for Dariconic and Hamildak to raise after the letter rogatory has been issued. *See Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp 668 (D. Del. 1981) (denying a party standing to object to a subpoena directed to a non-party); *See also Vogue Instruments Corp. v. LEM Instruments Corp.*, 41 F.R.D. 346 (S.D.N.Y. 1967) (same).

Even assuming the Defendants did have standing, objections as to the scope of a discovery request are not sufficient grounds upon which to deny the request altogether. Courts generally find it preferable to modify discovery requests as opposed to denying them outright. *See Vitale v. McAtee*, 170 F.R.D 404, 407 (E.D. Pa. 1997). Therefore, the Defendants have, at best, made an argument for modifying the letter rogatory, not denying it in its entirety.

### VI. Defendants Overstate The Time It Will Take To Obtain Discovery.

The Defendants' final argument is that the letter rogatory should be denied as moot because any evidence obtained from the Irish entities would not be available in time for trial. The sole basis for this argument is a statement on the United States Department of State's website that obtaining discovery through a letter rogatory "may take a year or more worldwide." (*See* D.I. 103 at 5). Given that trial is scheduled for April of 2011, roughly four months from now, the Defendants contend that the letter rogatory will not result in the timely production of evidence. The Defendants' argument fails in two important respects.

First, the Defendants overstate the amount of time it will likely take to obtain discovery through the letter rogatory issued by this Court. According to the Defendants' own exhibit, it is the transmission of the letter rogatory through official diplomatic channels that makes the

process so timely (*See* D.I. 103 at 1). Letters rogatory need not be sent through diplomatic channels, however, but can be sent directly to the relevant foreign tribunal. *See* 28 U.S.C. § 1781(b)(2). It is American General's intention to send the letter rogatory, should it be issued by this Court, directly to the appropriate court in Ireland. Sending the letter rogatory this way will substantially shorten the time-frame within which a response is expected.

Second, even assuming the Defendants are correct about the length of time this process will take, the Defendants argument is simply that discovery through the letter rogatory might not result in the timely production of evidence. The case law makes clear, however, that the question of whether a letter rogatory will ultimately result in the production of evidence that can be used at trial should not be considered by a court when deciding whether to issue a letter rogatory. *See B & L Drilling Elecs. v. Totco*, 87 F.R.D. 543, 545 (W.D. Ok. 1978). Rather, the pertinent question is whether the evidence sought is relevant to the claims of the party seeking discovery. *See id.* As American General has already demonstrated, the information sought from Dariconic and Hamildak is critical to its prosecution of this matter. This Court has previously shown an aversion to prohibiting discovery requests that seek information critical to a party's case, notwithstanding approaching or passed discovery deadlines. *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F.Supp.2d 469 (D. Del. 2003); *See also La Chemiste Lacoste v. The Alligator Co., Inc.*, 60 F.R.D. 164 (D. Del. 1973). Therefore, American General should, at the very least, be allowed to seek discovery through the letter rogatory, notwithstanding the fact that discovery might not be timely.

## **Conclusion**

For the reasons set forth above, American General respectfully requests that its Motion for Issuance of Request for International Judicial Assistance be granted.

                                                  COOLEY MANION JONES LLP

                                                  */s/ Amaryah K. Bocchino*

| | |
|---|---|
| | Jason A. Cincilla (#4232) |
| | Amaryah K. Bocchino (#4879) |
| OF COUNSEL: | 1105 North Market Street, Suite 200 |
| WILSON ELSER MOSKOWITZ | Wilmington, DE  19801 |
| EDEMAN & DICKER LLP | (302) 657-2100 |
| Robert P. Lesko | jcincilla@cmjlaw.com |
| 33 Washington Street | abocchino@cmjlaw.com |
| Newark, New Jersey 07102-3017 | |
| (973) 624-0800 ph. | |
| (973) 624-0799 fx. | |
| *Attorneys for Plaintiff* | |
| *American General Life Insurance Company* | |

December 16, 2010

## CERTIFICATE OF SERVICE

I, Amaryah K. Bocchino, counsel of record for American General Life Insurance Company, hereby certify that on December 16, 2010, I electronically filed AMERICAN GENERAL LIFE INSURANCE COMPANY'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR ISSUANCE OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

*/s/ Amaryah K. Bocchino*
Amaryah K. Bocchino (#4879)